*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-465

APRIL TERM, 2011

| | |
|---|---|
| In re T.A., D.A., A.A., A.A., B.A. and A.A., Juveniles | } APPEALED FROM: |
| | } |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. F306/307/308/309/ |
| | 310/311-7-08 Cnjv |

Trial Judge: Edward J. Cashman

In the above-entitled cause, the Clerk will enter:

Father appeals from a superior court order terminating his parental rights. He contends the evidence fails to support the court's findings concerning his alcohol abuse. We affirm.

Except where otherwise noted, the evidence and findings are undisputed and may be summarized as follows. The parents are Sudanese refugees who arrived in Vermont in 2006 with their five young children. A sixth child, A.A., was born in October 2007. With the assistance of various social service agencies and other Sudanese community members the family was able to find adequate housing and medical care. Father found some part-time employment and mother provided full-time care for the children.

The Department for Children and Families became involved with the family in July 2008, when a Fletcher Allen social worker reported that the youngest child had appeared at the emergency room with what appeared to be cigarette burns on her body and scar tissue suggesting prior similar injuries. She was placed in DCF custody. DCF determined that the injury had been inflicted by another child while in father's care. All of the children were placed under a protective supervision order. The five oldest children remained at home, and the youngest was returned home after a month in DCF custody.

Shortly thereafter, in October 2008, mother assaulted father, who was intoxicated at the time, leading to a new protective order requiring mother to receive a mental health assessment and father to obtain alcohol counseling. Both refused assistance. A visit by a DCF social worker at the time found the home to be in disorder and the children unfed. The following month, the police found mother wandering the streets, delusional and suffering from hypothermia. This event, and father's alcohol abuse, prompted a CHINS petition and adjudication. The court adopted a plan providing for both parents to participate in a range of services which included alcohol counseling for father and intensive family-based services for both parents.

Both parents refused to attend a family assessment or sign releases to allow DCF to monitor the services. Father attended an alcohol assessment, which recommended twice-weekly counseling sessions, but he attended only a few over the next several months. DCF continued to

receive reports of father's alcohol abuse, and in February 2009, he was arrested for domestic assault arising from an incident in which he was reported to be intoxicated. The incident led to a conviction for domestic assault, and resulted in another CHINS adjudication and the removal of the children from the home. They were placed in foster care, where they have since remained.

Thereafter, DCF continued to receive credible reports of father's alcohol abuse and incidents of domestic violence. Father refused to engage meaningfully in any counseling services, and mother was hospitalized, in April 2009, with a diagnosis of paranoid schizophrenia. In May 2009, father was incarcerated for violating his conditions of release. After his release, DCF arranged for father to receive parenting education through Easter Seals, but he failed to meet any of the parenting goals. His supervised visits with the children were sporadic and occasionally confrontational. In July 2009, DCF filed petitions to terminate the parental rights of both parents. A September 2009 case plan continued to call for father to obtain an alcohol assessment, which he refused. He also refused to sign a release allowing DCF to consult with a therapist from an organization called Connecting Cultures who had met with father. Another referral was made to Easter Seals for parental education in January 2010, but father failed to follow through. That same month, the therapist from Connecting Cultures confirmed for DCF that father was attending counseling on a semi-regular basis, but the was not undergoing substance abuse testing.

Following an evidentiary hearing over the course of several days, the court issued a written decision in November 2010, granting the termination petitions as to both parents. The court found that mother's mental health had deteriorated to the point where she could not function to meet her own needs, and that there was no likelihood she would be able to resume parental responsibilities within a reasonable time. Mother has not appealed from this determination.

The court found that father had not played a constructive parental role and that, despite an array of community and social services offered, had shown neither the ability nor the motivation to develop parenting skills sufficient to resume parental responsibilities within a reasonable time. As summarized by the court, "father's pattern of personal violence, alcohol abuse and stubborn resistance to accept help prevent him from playing any constructive role with any of the children," and he was neither "able or willing to accept the offered help" to develop the skills necessary to care adequately for the children.

The court further found that all of the children had endured episodes of domestic violence; that all had suffered emotionally and that two had been physically injured as a result of the abuse; and that the oldest child had been forced to assume the role of de facto parent to the younger children. The court noted that the children now live close to each other in their respective foster homes, enjoy regular contact with one another, and are flourishing in their homes, schools and community. Accordingly, the court found by clear and convincing evidence that termination of parental rights was in the best interests of the children, and granted the petitions. This appeal by father followed.

Father's sole claim on appeal is that the evidence fails to support the court's findings that he engaged in a pattern of alcohol abuse which continues "unabated" and has not been addressed. Father asserts that there was no evidence the substance abuse continued after his incarceration in May 2009, and contends that this alleged misapprehension of the record requires reversal.

2

The claim misstates the court's findings and misapprehends the basis of its decision. The court made no specific findings concerning father's post-incarcerative substance abuse. Rather, the evidence showed, and the court found, a clear pattern of alcohol abuse from DCF's initial involvement with the family to the domestic assault that resulted in father's conviction and incarceration in May 2009. Thereafter, as the court noted, the evidence showed that father persistently refused to attend substance-abuse counseling recommended by DCF, submit to testing, or sign related waivers. It was thus father's refusal to acknowledge and address his substance abuse problem, as much as his earlier pattern of abuse and its deleterious effect on his family, that formed the core of the court's findings in this regard. Father relies on the testimony of his therapist at Connecting Cultures, who testified that father scored favorably on a psychological test measuring substance-abuse disorders, but the therapist acknowledged that she was not authorized or licensed to administer alco-sensor tests to determine his actual use, and she did not do so. We thus find no merit to the claim that the trial court's findings are based on a misapprehension of the evidence or are unsupported by the record. See In re D.B., 2003 VT 81, ¶ 4, 175 Vt. 618 (mem.) (court's findings will not be disturbed if supported by credible evidence, and its conclusions will not be reversed if reasonably supported by findings).

The court's ultimate decision, moreover, was based on a larger pattern of behavior relating to father's persistent inability or refusal to engage in a wide range of parenting services and education, with the result that—after more than two years of diligent efforts by community and social service agencies—father remained unable to safely and adequately care for the children. Father has challenged none of these findings. The court's conclusion that there was no likelihood of father's resuming his parental responsibilities within a reasonable time was therefore amply supported. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice